UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 08-CV-3433 (JFB) (WDW)

———————

WATERVILLE INVESTMENT, INC.,

Plaintiff,

VERSUS

HOMELAND SECURITY NETWORK, INC. (NV CORP.) AND
PETER D. UBALDI,

Defendants.

———————

**MEMORANDUM AND ORDER**
July 2, 2010

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff Waterville Investment, Inc. (hereinafter "plaintiff" or "Waterville") brings this action in diversity against defendants Homeland Security Network, Inc. and Peter D. Ubaldi (hereinafter "defendants"), asserting a variety of claims under New York law arising from an alleged failure by defendants to compensate plaintiff for the production of a research report pursuant to an agreement between the parties.[1] Defendants move for partial summary judgment with respect to plaintiff's claims for misappropriation of trade secrets, fraud, negligence *per se*, and attorneys' fees. Defendants also move for summary judgment with respect to all of plaintiff's claims against the individual defendant Peter D. Ubaldi. For the reasons set forth below, the Court grants defendants' motion in its entirety.

---

[1] In exercising its diversity jurisdiction, the Court must "apply the substantive law of the forum state, New York." *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009) (citation omitted). Because the plaintiff is from New York, the Agreement that is the subject of this case provides that New York law applies (*see* Defs.' Ex. A, ¶ 10), and the parties apparently agree that New York law applies, the Court applies New York law to plaintiff's claims.

I. BACKGROUND

A. Factual Background

The Court has taken the facts described below from the parties' depositions, affidavits, and exhibits, and from defendants' Rule 56.1 statement of facts.[2] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

Plaintiff Waterville is a New York corporation with its principal place of business in New York. (Defs.' 56.1 ¶ 2.) Waterville is a financial industry provider and provides "sell-side" research. (Defs.' 56.1 ¶ 3.) Defendant Homeland Security Network, Inc. (hereinafter "HSYN") is Nevada Corporation with its principal place of business in New Jersey. (Defs.' 56.1 ¶ 1.) Defendant Peter Ubaldi is the president of HSYN. (Ubaldi Cert., Mar. 29, 2010, ¶ 1.)

In 2007, HSYN was seeking independent research on HSYN to determine how to attract investors and build the value of the company. (Defs.' 56.1 ¶ 4.) Waterville represented that it provided Wall Street data and research on small cap companies. (Defs.' 56.1 ¶ 5.)

Waterville and HSYN entered into a contract on March 1, 2007 (hereinafter "the Agreement"). (Defs.' 56.1 ¶ 6; Defs.' Ex. A.) The Agreement provided that Waterville would perform various services for HSYN including: (1) posting certain information concerning HSYN on its website; and (2) producing an eight to ten page summary research report providing data and research on HSYN. (Defs.' 56.1 ¶ 7.) In return, HSYN agreed to compensate Waterville as follows: (1) $500 cash payment to Waterville; (2) in exchange for $25 from Waterville, HSYN would issue 3,000,000 shares of Rule 144 Restricted Common Stock in a specific manner; (3) Waterville would be entitled to an additional $30,000 shares of HSYN's Rule 144 Common Stock upon renewal of the Agreement. (Defs.' 56.1 ¶ 8.)

HSYN and Waterville both assert that the

---

[2] The Court notes that plaintiff failed to file and serve a response to defendants' Local Rule 56.1 Statement of Facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935(ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not submit a Rule 56.1 statement, plaintiff does provide some outline of its factual position in its opposition papers with some citation to the factual record. Thus, both the Court and defendants are able to discern the factual evidence upon which plaintiff relies to create material issues of disputed fact to overcome summary judgment. Accordingly, in the exercise of its broad discretion, the Court will overlook this defect and will deem admitted only those facts in defendants' 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504.

other party breached the Agreement. Specifically, Waterville asserts that it performed the required services and that it is owed the compensation under the Agreement (Defs.' 56.1 ¶ 10); HSYN asserts that Waterville did not provide the agreed-upon services. (Defs.' 56.1 ¶ 9).

B. Procedural History

On August 21, 2008, plaintiff filed the complaint in this action, asserting claims for: (1) breach of contract; (2) quantum meruit; (3) misappropriation of trade secrets; (4) fraud; (5) negligence *per se*; and (6) attorneys' fees. On March 30, 2010, defendants moved for partial summary judgment with respect to plaintiff's trade secrets, fraud, negligence *per se*, and attorneys' fees claims. Defendants also moved for summary judgment with respect to all of plaintiff's claims against the individual defendant, Peter D. Ubaldi. Plaintiff filed its opposition on May 7, 2010.[3] Defendants replied on May 25, 2010. Oral argument was held on June 29, 2010. This matter is fully submitted.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary

---

[3] Plaintiff filed a corrected opposition on June 29, 2010.

3

judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

For the reasons set forth below, defendants' motion for summary judgment is granted in its entirety.

### A. Misappropriation of Trade Secrets

Plaintiff alleges that defendants misappropriated plaintiff's trade secrets contained in the draft research report being prepared under the Agreement. For the reasons set forth below, the Court grants defendants' motion for summary judgment on this claim.

#### 1. Legal Standard

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quotation omitted). In determining whether information qualifies as a trade secret, New York courts have considered the following factors:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007, 1013 (N.Y. 1993) (quoting Restatement of Torts § 757 cmt. b) (internal quotation marks and brackets omitted).

#### 2. Application

Plaintiff argues that the report it prepared pursuant to the Agreement contained trade secrets, and that defendants misappropriated these secrets. As a threshold matter, it is undisputed that plaintiff never completed the report in question and, therefore, never provided such a report to defendants.[4] (*See* Sweeney Dep. at 60, 63.) As plaintiff's president, Michael Sweeney, testified: "[T]here was never a report, never finished report, so there was no trade secret information."[5] (Sweeney Dep. at 64.)

---

[4] Therefore, it is unclear from plaintiff's papers what report defendants are alleged to have misappropriated. As discussed *infra*, however, the Court liberally construes plaintiff's papers as attempting to assert a trade secrets claim with respect to the information provided in plaintiff's draft report.

[5] Plaintiff argues that Sweeney is not an expert and that his lay opinion as to what constitutes a "trade secret" is not dispositive. The Court agrees that Sweeney's testimony is not dispositive of this legal question, but concludes, for the reasons discussed *infra*, that plaintiff's trade secret claim

However, defendants provide the Court with a copy of an initial draft of plaintiff's report. (*See* Ubaldi Cert., May 25, 2010, Ex. A.) Therefore, the question before the Court on this motion is whether defendants misappropriated any trade secrets from plaintiff's draft report.[6]

Plaintiff's draft report consists of several paragraphs of text and data cut from defendant's website, SEC filings, and business plan. (Ubaldi Cert., May 25, 2010, ¶ 2, Ex. A.) Alongside this text are plaintiff's questions and comments. (*Id.*) It is well settled that publicly available information cannot, as a matter of law, constitute a trade secret.[7] *See Ashland Mgmt.*, 624 N.E.2d at 1013 ("[A] trade secret must first of all be secret."); *see also Medinol Ltd. v. Boston Scientific Group*, 346 F. Supp. 2d 575, 608 (S.D.N.Y. 2004) ("[T]he design and make-up of a product, already on the market, cannot be protected as a trade secret because, among other reasons, the design and make-up can no longer be secrets." (collecting cases)); *JAD Corp. of Am. v. Lewis*, 759 N.Y.S.2d 388, 388 (App. Div. 2003) ("[T]he information the plaintiff sought to protect is readily available from publicly available sources, and thus not entitled to trade secret protection." (citation omitted)). Therefore, to the extent plaintiff claims that publicly available information in the draft report is a trade secret, such a claim fails.

Plaintiff argues, however, that its "unique" arrangement of publicly available data to make it more "condensed, concise and clear" (which, apparently, plaintiff asserts is on display in the draft report) constitutes a trade secret. For instance, Michael Sweeney testified that he "took the language and edited it into a form that is more readable." (Pl.'s Br. at 3 (citing Sweeney Dep. at 40-41).) In its opposition to defendants' motion, plaintiff focuses on the general proposition that the unique compilation of publicly available data can be a trade secret. The Court recognizes that a trade secret *can* exist in such circumstances. *See Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) ("[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectible secret." (quoting *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965))). However, in this case, plaintiff has failed to present any evidence that its alleged technique for making material more "condensed, concise and clear" is unique; instead, plaintiff relies on conclusory assertions in its brief. (*See* Pl.'s Br. at 3-4.) Furthermore, even if plaintiff had presented evidence that it possessed such a unique process, there is no allegation that

---

fails as a matter of law.

[6] Although the complaint alleges that defendants misappropriated certain other trade secrets, such as investor lists and plaintiff's previously completed successful reports (*see* Compl. ¶¶ 27, 30), plaintiff makes no reference to these alleged secrets in its opposition to defendants' motion and, thus, has abandoned any such claim. In any event, there is no evidence that investor reports were ever given to defendants. (*See* Sweeney Dep. at 61; Hayde Dep. at 25.) It is also undisputed that plaintiff's previously completed reports were publicly available on plaintiff's website. (Sweeney Dep. at 62-63.) Thus, any trade secrets claim based on these alleged secrets fails as a matter of law.

[7] Furthermore, the confidentiality clause of the Agreement applied to "information not obtainable by the general public." (Defs.' Ex. A, ¶ 5(d).)

5

plaintiff gave a description of that process, as opposed to a finished product displaying the effects of that process, to defendants. Plaintiff has thus failed to create a disputed issue of fact as to the existence of a trade secret in this case. *See, e.g.*, *Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, LLC*, 355 F. App'x 516, 518 (2d Cir. 2009) ("[Plaintiff] claims to have advised [defendant] that such a bid would cause the share price to increase, but even if [defendant] relied upon this unextraordinary prediction, no factfinder could conclude that it constituted *confidential* information within the meaning of the Agreement, which expressly excluded from that definition 'information . . . generally available to the public.'" (quoting *Buhler v. Michael P. Maloney Consulting, Inc.*, 749 N.Y.S.2d 867, 868 (App. Div. 2002))) (affirming grant of motion to dismiss); *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292(DLC), 2008 WL 463884, at *9 (S.D.N.Y. Feb. 20, 2008) ("[Plaintiff] has not demonstrated the 'way in which [the] various components fit together as building blocks in order to form the unique whole,' and thus has not raised a triable issue of fact as to its 'unique combination.' Therefore, defendants' motion for summary judgment on this claim is granted." (quoting *Intergrated Cash Mgmt.*, 920 F.2d at 174)); *see also Ring v. Estee Lauder*, 702 F. Supp. 76, 78 (S.D.N.Y. 1988) ("[I]mprovement of standard technique or quality, the judicious use of existing means, or the mixture of known ingredients in somewhat different proportions – all variations on a basic theme – all partake more of the nature of elaboration and renovation than of innovation." (quotation omitted)). Thus, plaintiff's trade secret claim must fail as a matter of law.

Furthermore, even assuming *arguendo* that plaintiff's draft report contained trade secrets, defendants present evidence that they did not use any of the information in plaintiff's draft report. (*See* Ubaldi Cert., May 25, 2010, ¶ 3 ("[N]ot one word of [the] marked up draft was ever used by defendant for any purpose whatsoever, least of all provided to any potential investors.").) Plaintiff does not point to any evidence in the record which controverts defendants' evidence. Because plaintiff has failed to submit evidence to raise a genuine issue of disputed fact as to whether defendants misappropriated a trade secret, and the uncontroverted evidence demonstrates that there was no misappropriation of trade secrets as a matter of law, the Court grants defendants' motion for summary judgment on this claim.

### B. Fraud

Defendants argue that plaintiff's fraud claim is indistinguishable from its breach of contract claim and, therefore, fails as a matter of law. For the reasons set forth below, the Court agrees and grants defendant's motion for summary judgment on this claim.

### 1. Legal Standard

In order to state a claim for fraud under New York law, a plaintiff is required to allege the following five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *see also Cohen v. Houseconnect Realty Corp.*, 734 N.Y.S.2d 205, 206 (App. Div. 2001). Under New York law, "[e]ach element of a fraud claim must be proven by clear and convincing evidence."

*Nader v. ABC Television, Inc.*, 150 F. App'x 54, 57 (2d Cir. 2005) (citation omitted); *see also Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 558 (S.D.N.Y. 2009) ("In proving the elements of fraud, the proponent of the claim must put forth clear and convincing evidence, a standard which applies at the summary judgment stage as well as at trial." (citations omitted)).

"New York law also requires that a fraud claim, raised in a case that stems from breach of contract, be 'sufficiently distinct from the breach of contract claim.'" *Maxim Group LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 306-07 (S.D.N.Y. 2010) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). Therefore, "under New York law, 'where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (quoting *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994)); *see also Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1160-61 (S.D.N.Y. 1996) (collecting cases). In order to distinguish its fraud claim from its breach of contract claim, a plaintiff must either: "'(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *Maxim Group*, 690 F. Supp. 2d at 307 (quoting *Bridgestone/Firestone*, 98 F.3d at 20).

2. Application

In the instant case, plaintiff argues that defendants falsely stated that they would compensate plaintiff in exchange for plaintiff's services (*see* Compl. ¶¶ 56-61), but that, in fact, "Defendant never intended to compensate Plaintiff from the start." (Pl.'s Br. at 4.) However, plaintiff points to no separate legal duty apart from the Agreement itself. Plaintiff also does not identify any fraudulent statement or misrepresentation by defendants that was collateral or extraneous to the Agreement, nor does plaintiff argue that it incurred any special damages that are not recoverable under a breach of contract claim. Therefore, because plaintiff has failed to raise a question of fact as to whether its fraud claim is distinct from its breach of contract claim, the claim fails as a matter of law. *See Guilbert v. Gardner*, 480 F.3d 140, 148 (2d Cir. 2007) ("The amended complaint . . . fails to support a claim of fraud under New York law because it is duplicative of the breach of contract claim." (collecting cases)) (affirming summary judgment); *Telecom*, 280 F.3d at 196 (collecting cases); *see also, e.g.*, *Maxim Group*, 690 F. Supp. 2d at 309 ("Because [defendant] has not met any of the three exceptions set forth by the Court of Appeals in *Bridgestone/Firestone* which is needed to plead a fraud claim in conjunction with a breach of contract claim, [plaintiff's] motion for summary judgment dismissing [defendant's] fraudulent inducement claim is granted."); *Greenstreet Fin., L.P. v. CS-Graces, LLC*, No. 07 Civ. 8005 (KNF), 2009 WL 323520, at *5 (S.D.N.Y. Feb. 4, 2009) (granting summary judgment on fraud claim where "the only fraud alleged arises out of the same facts that serve as the basis for the breach of contract claim" (quotation omitted)); *OP Solutions, Inc. v. Crowell &*

7

*Moring, LLP*, 900 N.Y.S.2d 48, 49 (App. Div. 2010) ("[P]laintiff's causes of action for fraud and negligent misrepresentation are not separate and apart from its claim for breach of contract. The claims are predicated upon precisely the same purported wrongful conduct as is the claim for breach of contract . . . ."). Accordingly, defendants' motion for summary judgment on plaintiff's fraud claim is granted.

C. Negligence *Per se*

In its Sixth, Seventh, and Eighth Causes of Action, plaintiff alleges negligence *per se* based on a failure to abide by an alleged standard of care established by different sections of the federal securities laws.[8] For the reasons set forth below, the Court grants defendants' motion for summary judgment on plaintiff's negligence claims.

1. Legal Standard

Under New York law, a plaintiff must establish the following elements to prove negligence: (1) that a duty of care was owed by the defendant to the plaintiff; (2) that the defendant breached that duty; (3) that the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) that plaintiff was damaged. *Luina v. Katharine Gibbs Sch. N.Y., Inc.*, 830 N.Y.S.2d 263, 264 (App. Div. 2007); *Talbot v. N.Y. Inst. of Tech.*, 639 N.Y.S.2d 135, 136 (App. Div. 1996). "In New York, the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class 'is negligence itself.'" *Chen v. United States*, 854 F.2d 622, 627 (2d Cir. 1988) (quoting *Martin v. Herzog*, 126 N.E.2d 814, 815 (N.Y. 1920)).

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (affirming dismissal of negligence claims); *see also Chase Manhattan Bank, N.A. v. Remington Prods., Inc.*, 865 F. Supp. 194, 200 (S.D.N.Y. 1994) ("New York does not recognize a cause of action for negligent performance of a contract." (citing *Clark-Fitzpatrick*, 70 N.Y.2d at 389)), *aff'd* 71 F.3d 407 (2d Cir. 1995). In considering negligence claims arising out of a breach of contract, courts have applied the *Bridgestone/Firestone* analysis discussed above. *See, e.g.*, *B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474 (S.D.N.Y. 2010); *In re September 11 Litig.*, 640 F. Supp. 2d 323, 338-43 (S.D.N.Y. 2009). Thus, a plaintiff can assert a negligence claim in connection with a breach of contract claim only if: (1) the tort arises from a duty separate from the contract; (2) the tort is collateral or extraneous to the contract provision breached; or (3) plaintiff suffered special damages not recoverable on a breach of contract claim. *See B&M Linen*, 679 F. Supp. 2d at 487 (citing *Bridgestone/Firestone*,

---

[8] Plaintiff's papers clarify, and plaintiff's counsel confirmed at oral argument, that plaintiff does not assert federal claims under the statutes referenced in the complaint, namely, Section 17(a)(3) of the Securities Act, Section 10(b) of the Securities and Exchange Act, and Section 15 of the Securities Act. Instead, plaintiff argues that these statutes set forth a duty of care under New York law and that by breaching that statutory duty, defendants acted negligently *per se*. Plaintiff cites no authority for its argument that the federal securities laws establish a standard of care under New York negligence law. In any event, plaintiff's negligence claims fail because, as set forth *infra*, the claims are duplicative of plaintiff's breach of contract claims.

8

98 F.3d at 20, and *In re September 11 Litig.*, 640 F. Supp. 2d at 337, 339).

### 2. Application

Defendants argue, and the Court agrees, that plaintiff's claims for negligence, like its claim for fraud, are indistinguishable from its breach of contract claims. Specifically, plaintiff identifies no duty breached by defendants apart from the duty to compensate plaintiff under the Agreement. Plaintiff also does not allege any conduct collateral to the Agreement that forms the basis for the negligence claims. On the contrary, plaintiff's negligence claims are based on the same conduct that forms the basis for plaintiff's breach of contract claims, *i.e.*, a failure to compensate plaintiff under the Agreement. Finally, plaintiff does not allege any damages that could not also be recovered on a breach of contract claim. Thus, plaintiff's negligence claims fail as a matter of law. *See, e.g.*, *B&M Linen*, 679 F. Supp. 2d at 488 ("This negligence claim is nothing more than a duplication of [plaintiff's] core contract claims.") (granting motion to dismiss); *In re September 11 Litig.*, 640 F. Supp. 2d at 338-43 (dismissing negligence and negligence *per se* claims as duplicative of breach of contract claims); *Nardiello v. Stone*, 652 N.Y.S.2d 647, 649 (App. Div. 1997) (holding that negligence claim merged with breach of contract claim).

Accordingly, defendants' motion for summary judgment on plaintiff's negligence *per se* claims is granted.

### D. Attorneys' Fees

For the reasons set forth below, defendants' motion for summary judgment on plaintiff's claim for attorneys' fees is granted.

"Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (collecting cases); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005). Although a federal court has the inherent power to award attorneys' fees, courts can do so only in limited circumstances, where, for instance, a "party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quotation omitted).

In this case, there is no dispute that the Agreement at issue does not provide for attorneys' fees. (*See* Defs.' Ex. A.) In its opposition to defendants' motion, plaintiff argues that "[b]ut for Defendants['] Tortious behavior, Plaintiff would not have had to pay attorneys['s] fees nor the costs of litigation. This is simple proximate cause from negligence claims." (Pl.'s Br. at 11.) Plaintiff's conclusory argument offers no valid legal reason to depart from the general rule that each side must pay its own attorneys' fees. Accordingly, defendants' motion is granted on this claim. *See U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) (holding that there is no "right to an award of attorney's fees on an ordinary claim of breach of contract" (citation omitted)); *Armored Group, LLC v. Homeland Sec. Strategies, Inc.*, No. 07-CV-9694 (LAP), 2009 WL 1110783, at *4 (S.D.N.Y. Apr. 21, 2009) ("It is well established that . . . attorneys' fees are not available in contract cases." (citing, *inter alia*, *U.S. Fid. Guar. Co. v. Brapetro Oil Serv. Co.*, 369 F.3d 34, 74 (2d Cir. 2004)) (granting motion to dismiss);

*Scientific Components Corp. v. Isis Surface Mounting, Inc.*, 539 F. Supp. 2d 653, 663 (E.D.N.Y. 2008) ("Given the well established policy that parties to a contract are generally responsible for their own attorneys' fees, the court declines to award either party such fees in this action.").

### E. Individual Liability

Defendants move for summary judgment on all of plaintiff's claims against the individual defendant Peter Ubaldi. For the reasons set forth below, defendants' motion is granted.

### 1. Legal Standard

Under New York law, two elements must be shown in order to pierce the corporate veil: "(i) that the owner exercised complete dominion over the corporation with respect to the transaction at issue; *and* (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Thrift Drug, Inc. v. Univ. Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997) (citations and internal quotation marks omitted) (emphasis in original); *see also Rochester Gas & Elec. Corp.*, 355 F. App'x 547, 549-50 (2d Cir. 2009) ("In New York, a court may disregard the corporate form if (1) the parent corporation so dominates the subsidiary as to render it 'a mere instrumentality of the parent,' (2) the parent uses its control 'to commit fraud or other wrong,' and (3) 'the fraud or wrong results in an unjust loss or injury to plaintiff." (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991))); *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1998) (noting that to pierce the corporate veil the "parent must exercise complete dominion 'in respect to the transaction attacked' so that the subsidiary had 'at the time' no separate will of its own and such domination must have been used to 'commit the fraud or wrong' against plaintiff, which proximately caused plaintiff's injury." (quotation omitted)); *accord Marketplace LaGuardia Ltd. P'ship v. Harkey Enters., Inc.*, No. 07-CV-1003 (CBA), 2008 WL 905188, at *2 (E.D.N.Y. Mar. 31, 2008). In the Second Circuit, courts look at a number of non-exclusive factors to determine whether the necessary dominion and control exists for the Court to pierce the corporate veil, including: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *William Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). In applying these factors, "there is a presumption of separateness . . . which is entitled to substantial weight." *Am. Protein Corp.*, 844 F.2d at 60.

## 2. Application

It is undisputed that the Agreement in this case was between plaintiff Waterville and defendant HSYN; Ubaldi is not a party to the contract, and he did not personally guarantee it. (*See* Defs.' Ex. A; Ubaldi Cert., Mar. 29, 2010, ¶ 5.) Defendant has presented evidence that HSYN is a publicly traded company (with 2,000 stockholders) and has a board of directors. (Ubaldi Cert., May 25, 2010, ¶ 4.) Plaintiff has failed to produce any evidence that Ubaldi exercised the necessary dominion and control over HSYN, let alone any evidence that such control was used to harm plaintiff, to warrant piercing the corporate veil. Instead, plaintiff conclusorily asserts in its opposition to defendants' motion that there "was no real company" and that HSYN was a "facade." (*See* Pl.'s Br. at 12.) Because plaintiff points to no evidence whatsoever in support of this claim, the Court grants defendants' motion for summary judgment on all of plaintiff's remaining claims against Ubaldi.[9] *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1461 (2d Cir. 1995) ("The plaintiff's conclusory assertions, without more, are not evidence . . . and are completely inadequate to support a finding that it would be unjust to respect [defendant's] corporate form." (citation omitted)) (affirming grant of summary judgment on corporate veil-piercing claim); *see also DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) ("Plaintiffs assert that the fraudulent actions taken by Allstate employees were 'caused by, known to and ratified by [defendant].' However, the pleadings are devoid of *any* specific facts or circumstances supporting this assertion.") (affirming dismissal of corporate veil-piercing claim); *In re Currency Conversion Antitrust Litig.*, 256 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (granting motion to dismiss where plaintiff's allegations in support of corporate veil-piercing were conclusory).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. The remaining parties to this action shall participate in a telephone conference on July 15, 2010 at 11:00 a.m. At that time, counsel for plaintiff shall initiate the call and, with all parties on the line, contact Chambers at (631) 712-5670.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: July 2, 2010
Central Islip, New York

\* \* \*

Attorney for plaintiff is Marshal D. Shichtman, Marshal Shichtman & Associates, P.C., 1 Old Country Road, Suite 360, Carle Place, NY 11514. Attorneys for defendants are Frederick C. Biehl, III, Soriano Henkel Salerno Biehl & Matthews, 75 Eisenhower Parkway, Roseland, NJ 07068, and Steven V. Podolsky, Cherny & Podolsky, PLLC, 8778 Bay Parkway, Suite 202, Brooklyn, NY 11214.

---

[9] As discussed *supra*, plaintiff's claims for misappropriation of trade secrets, fraud, and negligence *per se* all fail as a matter of law.